## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

UNITED STATES OF AMERICA

v.                                                                    No. 5:96-cr-24-BJB

GARY DUANE HARRIS

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Gary Duane Harris is serving a 480-month prison sentence for three convictions related to a 1996 shooting. Citing an "unwarranted uniformity" between his sentence and that of his co-defendant (the shooter), his youth at the time of the offenses, his purported rehabilitation, and other considerations, Harris seeks a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). But Harris hasn't shown that extraordinary and compelling reasons warrant his release. And a sentence reduction would be inappropriate under the § 3553(a) factors. So the Court denies his motion.

### I.

In 1996, seventeen-year-old Harris and his co-defendant, Anthony Gaines, tried to rob two soldiers on Fort Campbell in Kentucky. *See Harris v. United States*, 19 F.4th 863, 865 (6th Cir. 2021); Presentence Investigation Report (DN 259) at 6–7. During the encounter, Gaines discharged his handgun, killing one of the soldiers. *Harris*, 19 F.4th at 865. Harris eventually pled guilty (without a plea agreement) to aiding and abetting second-degree murder, aiding and abetting attempted robbery, and aiding and abetting the use of a firearm during a crime of violence. *Id.*; 18 U.S.C. §§ 2, 1111, 2111, 924(c). These offenses carry a combined maximum sentence of life imprisonment. And they produced a sentencing-guideline range of 360 months to life. PSR at 13.[1] The Court ultimately sentenced him to 480 months' imprisonment. *See*

---

[1] The sentencing judge applied the first-degree murder guidelines to Harris, despite Harris's conviction for *second*-degree murder. *See* Sentencing Transcript (DN 257-4) at 73. The judge based his decision on U.S.S.G. § 2B3.1: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." *See* Sentencing Transcript at 72–73. Because the "application of the § 2A1.1 cross-

Judgment (DN 257-2) at 3.  Harris currently resides at the Federal Correctional Institution in Manchester, Kentucky.

Harris has made numerous requests for different types of post-conviction relief.  In 2001, the Sixth Circuit affirmed his conviction and sentence, rejecting his contention that the sentencing judge miscalculated the sentencing-guideline range. *See United States v. Harris*, 238 F.3d 777, 779 (2001).  In 2003, this Court denied Harris's first 28 U.S.C. § 2255 motion.  *See* DN 146.  In 2021, the Sixth Circuit affirmed the denial of Harris's second or successive § 2255 motion challenging his conviction and sentence under § 924(c).  Having served approximately 26 years of his 40-year sentence (which Harris contends will be shortened with good-time credit), Harris once again moves for post-conviction relief, this time via § 3582(c).  Motion at 1; Supplemental Brief (DN 286) (styled as an "Amendment" to Harris's Motion).

## II.

District courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1)(A).  *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted).  Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors."  *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quotations omitted).  Those factors include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense."  *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).[2]

"As of today, the Sentencing Commission has not adopted a policy statement that applies when a defendant (as opposed to the Bureau of Prisons) files a motion." *McCall*, 56 F.4th at 1054 (quotation omitted).  Because Harris, rather than the BOP, filed the motion, the court may "skip step two."  *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021) (quotation omitted).  "If either of the remaining prerequisites

---

reference was specifically mandated" by Circuit precedent, the Sixth Circuit affirmed this application of the Guidelines.  *See United States v. Harris*, 238 F.3d 777, 779 (6th Cir. 2001).

[2] A prisoner also must exhaust any available administrative remedies before filing a motion for compassionate release.  *See* § 3582(c)(1)(A); *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020).  The parties agree that Harris exhausted these remedies before filing his motion.  Motion at 1; Response (DN 293) at 3.  To the extent Harris failed to exhaust before filing his *supplemental* brief (which introduces new grounds for release), the Government expressly waived any exhaustion argument.  *Id.* at 3–4; *see United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (waiver is an exception to mandatory claim-processing rules).

are lacking, [the] motion fails." *United States v. Roman*, No. 21-3718, 2022 WL 363866, at *2 (6th Cir. Jan. 7, 2022) (quotation omitted).

## III.

Harris points to several reasons he characterizes as extraordinary and compelling: the similarity between his own and his co-defendant's sentences, his criminal history, his age, his rehabilitation in prison, the increased risk of complications from Covid-19, and the allegedly ineffective assistance of his trial counsel (mentioned only in his supplemental filing). *See* Motion at 3; Supplemental Brief at 1–3. These are not extraordinary and compelling reasons that warrant his release. And even if they were, Harris's release would be inappropriate under the § 3553(a) factors.

### A. Extraordinary and Compelling

Section 3582(c) doesn't define "extraordinary and compelling." So "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. "Of course, an 'extraordinary and compelling reason' is one that is unusual, rare, and forceful." *See McCall*, 56 F.4th at 1055.

"[F]acts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). So Harris's arguments based on his prior criminal history, age at the time of the offenses, and the length of his sentence relative to his co-defendant's are non-starters. The sentencing judge knew all this. And "§ 3582(c)(1)(A)(i) is not an open-ended invitation to simply relitigate and reweigh the § 3553(a) factors based on facts that existed at sentencing." *Id.* at 569.

Harris's contention that the Court should reduce his sentence because he rehabilitated himself and used his time productively in prison also fails. "Rehabilitation … is not by itself extraordinary and compelling." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). As to his Covid-based argument, Harris admits that he already had Covid and "recovered." Motion at 18. And the record here shows he has been vaccinated. DN 295 (Vaccination Record) at 1. Harris is in his mid-40s with no record evidence indicating early release would have a meaningful effect on his health. He complains of several "lingering adverse effects" of Covid, and contends that he "most likely" has "osteosarcoma or chondrosarcoma." Motion at 18; Reply (DN 301) at 2. But the record doesn't indicate how early release would ameliorate those effects or ailments. Nor does it indicate how early release would fix what he calls a "lytic, expansile lesion on his right finger," or return his "blood chemistry analysis" to "healthy" levels. Reply at 2. And Harris's short reply, which

for the first time specifies these ailments, doesn't address any of the Government's contentions—namely its assertion that his current facility doesn't subject him to a high risk of contracting Covid. Response (DN 293) at 6. All of this "substantially undermines his request for a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). And he doesn't present any other "extenuating circumstances" justifying a Covid-based sentence reduction. *McKinnie*, 24 F.4th at 588.

Also not extraordinary and compelling is Harris's argument that had he agreed to the Government's initial plea offers, he'd have already served his entire sentence. *See* Supplemental Brief (DN 286). "Defendant's remorse for not accepting a more favorable plea offer is not a basis for compassionate release." *United States v. Liriano*, No. 03-cr-227-3, 2020 WL 4017821, at *2 (S.D.N.Y. July 15, 2020). Insofar as he asserts his counsel was ineffective, "a compassionate-release motion is not the proper vehicle for raising claims regarding ineffective assistance of counsel." *United States v. Bass*, 2022 WL 16752876, at *1 (6th Cir. June 3, 2022). And to the extent he suggests that "the combination of grounds for release, none of which independently supports a sentence reduction" is extraordinary and compelling, that argument fails too. *Lemons*, 15 F.4th at 749.[3]

Also counseling against a sentence reduction is Harris's numerous failed attempts at post-conviction relief. *See e.g.*, *Harris*, 19 F.4th at 872 (denying Harris's second or successive § 2255 motion). Harris "cannot avoid these restrictions on post-conviction relief by resorting to a request for compassionate release instead." *McCall*, 56 F.4th at 1057 (quotations omitted). After all, "habeas is the appropriate place to bring challenges to the lawfulness of a sentence." *Id.* at 1058. So to the extent Harris's arguments mirror the ones previously raised and rejected, it would be inappropriate to grant a sentence reduction on those grounds.

## B. Section 3553(a) Factors

Even if Harris had presented an extraordinary and compelling reason, release still would be unwarranted under the § 3553(a) sentencing factors. His motion doesn't give a "compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Sherwood*, 986 F.3d at 954. So Harris fails to "persuade the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054.

---

[3] Because Harris "failed to demonstrate extraordinary and compelling reasons for compassionate release," the Court needn't "address … [Harris's] post-release plan." *United States v. Sykes*, No. 21-1709, 2022 WL 1462466, at *3 (6th Cir. Mar. 15, 2022). And to the extent Harris argues that the sentencing court miscalculated his sentencing-guideline range, this contention fails because the Sixth Circuit already affirmed that calculation. *See Harris*, 238 F.3d at 779.

*First*, the troubling nature of Harris's offenses cautions against a reduced sentence. He was convicted by a jury of aiding and abetting the following crimes: murder, attempted robbery on an Army base, and use of a firearm during a crime of violence. PSR at 7. Harris and his co-defendant Gaines drove to Fort Campbell, discussed a robbery plot on the soldiers' pay day, and targeted a soldier. *Id.* at 6–7. Gaines had a gun, which he showed to Harris. *Id.* When they encountered difficulty entering the "closed" military base, Harris told a military police officer that he was having vehicle troubles. Harris and Gaines drove to the Shoppette, where they saw the two soldiers they decided to rob. They approached the soldiers. Gaines pulled out a gun. The gun then fired when (according to Gaines), he tried to move it from his left to his right hand. The bullet hit the neck of the victim, who died a few hours later. *Id.*

As the sentencing judge surely recognized, Harris made several decisions to arrive at this tragic result. Although Harris did not pull the trigger, he risked the worst-case scenario coming to fruition when he decided to participate in an armed robbery of a soldier on a military base. To be sure, it appears Harris has made strides in terms of rehabilitation that we all should applaud.[6] But that doesn't necessarily negate this serious criminal conduct or counsel in favor of early release.

*Second*, Harris has a criminal history that also weighs against release. In March 1996, he burgled a home, stealing guns and other items valued at over $300. PSR at 10. About two weeks later, he stole clothing from a shopping mall. *Id.* When the police caught him, Harris admitted to breaking into and burglarizing two other homes. *Id.* Harris argues that this is not a significant criminal history, emphasizing the short 13-day period during which he committed these crimes. Motion at 6. But the timing of Harris's spree does not reduce its gravity. True, the BOP deemed Harris to be at a "low" risk for recidivism. DN 257-11 at 2. But when considering his criminal history in light of the offenses for which he is currently convicted, the Court finds a persistent need "to protect the public from further crimes." § 3553(a)(2)(C).

*Third*, releasing Harris would "fail to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense." *United States v. Thomas*, No. 3:12-cr-119, 2022 WL 1421849, at *3 (W.D. Ky. May 5, 2022); § 3553(a)(2)(A). Armed robbery is a serious crime with potentially devastating consequences. The victim's tragic death here demonstrates this point. It is unsurprising why Congress and the Sentencing Commission have instructed judges to consider strong sentences for those who commit these kinds of crimes. And Harris

---

[6] Since Harris has been incarcerated, he has obtained a GED, completed over 1,000 classroom hours' worth of educational courses, and earned 37 certificates of achievement in areas such as computer skills, financial planning, and language skills. Motion at 7–8. He also has spent much time working, making productive use of his time and preparing to re-enter society eventually. *Id.* at 8. His rehabilitation, however, isn't enough to justify release when considering all the § 3553(a) factors.

still has nearly eight years left to serve.   Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Feb. 10, 2023).   Harris's projected release date is in October 2030.

That nearly eight years of Harris's sentence remains counsels against his release.  Discharging Harris's sentence would not adequately respect the rule of law as embodied in the original sentence, and would fail to afford adequate deterrence given the sentencing judge's original determination and the absence of newly relevant evidence.   § 3553(a)(2)(A)–(B); *Thomas*, 2022 WL 1421849, at *3 (releasing defendants who have served a fraction of their sentence fails to reflect seriousness of offense); *United States v. Hill*, No. 11-20090-01, 2020 WL 7056098, at *2 (D. Kan. Dec. 2, 2020) (20% of sentence remaining).

In sum, nothing suggests "why the sentencing court's § 3553(a) analysis" should be any different today.  *Sherwood*, 986 F.3d at 954.

## ORDER

The Court denies Harris's motion for compassionate release (DN 257).

Benjamin Beaton, District Judge
United States District Court

February 20, 2023